1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

ADAM ZELTON,

12

Plaintiff,

13

v.

FEDEX EXPRESS CORPORATION et al.,

14

Defendant.

15

CASE NO. 2:23-cv-01174-TL

ORDER ON MOTION FOR
SUMMARY JUDGMENT

16

17      This matter is before the Court on Defendant FedEx Express Corporation's motion for

18  summary judgment. Dkt. No. 44. Having considered Plaintiff Adam Zelton's opposition (Dkt.

19  No. 45), Defendant's reply (Dkt. No. 47), and the relevant record, the Court GRANTS Defendant's

20  motion.[1]

21                          I.      BACKGROUND

22

23

24

---

[1] Neither Party requested oral argument (*see* Dkt. No. 44 at 1; *see generally* Dkt. No. 45), and the Court finds oral argument unnecessary. *See* LCR 7(b)(4).

1    This action arises from Plaintiff's termination from his employment with Defendant. *See*

2   *generally* Dkt. No. 34 (amended complaint). The undisputed facts, as the Court understands

3   them, follow.

4    On or about August 3, 2022, Plaintiff was hired by Defendant as a courier at the Seattle

5   FedEx Station. Dkt. No. 44-1 (Zelton Dep. Tr.) at 5–6, 15. When he was hired, he was provided

6   with a paper badge showing his name and employee identification, which was housed inside of a

7   case attached to a lanyard and intended to be worn around Plaintiff's neck. *Id.* at 16. Plaintiff was

8   instructed to wear the badge at all times for security reasons. *Id.* at 17.

9    On the morning of September 13, 2022, Plaintiff arrived at the Seattle FedEx Station and,

10   after showing his badge to an employee outside, entered the building. *Id.* at 22. Once Plaintiff

11   entered the building, he was asked by a senior manager to again show his badge and instructed to

12   wear the badge, which was underneath his partially-zipped jacket, over his outermost layer. *Id.* at

13   22–24.

14    Plaintiff informed the manager that he would show his badge but asked to "put [his] stuff

15   down first." *Id.* at 27. The senior manager informed Plaintiff that he "need[ed] to show [his]

16   badge] now," and an exchange between the two occurred. *See id.* Plaintiff said something to the

17   effect of "[i]s it really necessary," and "[c]an't you see I have the badge?" *Id.* at 28. The senior

18   manager then approached Plaintiff and instructed him to "[p]ut [the badge] on now." *Id.* Plaintiff

19   continued into the building to the office where his training was scheduled to take place, and then

20   "changed [his] mind, . . . grabbed [his] bag[,] and walked out." *Id.*

21    As Plaintiff was walking out, another senior manager approached him and instructed

22   Plaintiff to "step into her office." *Id.* at 29. Plaintiff refused, telling the second senior manager,

23   "[n]o, not right now," and that he "d[idn't] think it[ was] necessary." *Id.* As he left, Plaintiff saw

24   that one or two of the managers did not have their badges, which upset him more. *Id.* at 30.

ORDER ON MOTION FOR SUMMARY JUDGMENT – 2

1   Plaintiff then left the building, telling the second senior manager that he needed to "cool off." *Id.*

2   at 31. At some point during the exchange, Plaintiff used profanity and raised his voice, though

3   the degree to which he did both is disputed. *See id.*; *see also* Dkt. No. 45 at 12.

4          A senior manager followed Plaintiff outside and asked for his badge and other company

5   property. *See* Dkt. No. 44-1 at 31. Plaintiff refused to turn his badge over, as he believed that the

6   badge was his personal property, and he told the managers that he did not have any other

7   property. *See id.* A senior manager again asked for Plaintiff's badge, and Plaintiff again refused

8   to turn it over. *Id.* Plaintiff then left the Seattle FedEx premises. *See* Dkt. No. 34 at 3.

9          Several days later, Plaintiff received a letter terminating his employment with Defendant.

10  Dkt. No. 44-1 at 34; *see also* Dkt. No. 44-2 at 16–17 (letter of termination). On May 10, 2023,

11  Plaintiff filed a charge of discrimination against Defendant with the Washington State Human

12  Rights Commission and United States Equal Employment Opportunity Commission ("EEOC").

13  *See* Dkt. No. 44-2 at 17–18. On May 24, 2023, the EEOC determined that it would not proceed

14  further with its investigation and provided Plaintiff with a notice of his right to sue Defendant.

15  *See* Dkt. No. 44-2 at 19–20.

16         Plaintiff filed the instant action on August 3, 2023, asserting claims against Defendant

17  FedEx as well as against the individual senior managers involved in the September 13, 2022,

18  altercation. *See generally* Dkt. Nos. 1 (application for leave to proceed in forma pauperis), 5

19  (complaint). Defendants moved to dismiss the individual Defendants (Dkt. No. 13), and the

20  Court granted that motion. Dkt. No. 22. Plaintiff subsequently filed an Amended Complaint

21

22

23

24

1    (Dkt. No. 34[2]), and Defendant answered (Dkt. No. 36). On June 13, 2025, Defendant filed the

2    instant motion, which seeks summary judgment on all of Plaintiff's claims. *See* Dkt. No. 44.

3                              **II.    LEGAL STANDARD**

4            The Federal Rules of Civil Procedure "mandate[] the entry of summary judgment, after

5    adequate time for discovery and upon motion, against a party who fails to make a showing

6    sufficient to establish the existence of an element essential to that party's case, and on which that

7    party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322

8    (1986) (citing Fed. R. Civ. P. 56(c)). The inquiry at the summary judgment stage is "whether the

9    evidence presents a sufficient disagreement to require submission to a jury or whether it is so

10   one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S.

11   242, 251–52 (1986).

12           The party moving for summary judgment must carry its burden of production by "either

13   produc[ing] evidence negating an essential element of the nonmoving party's claim or defense or

14   show[ing] that the nonmoving party does not have enough evidence of an essential element to

15   carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz*

16   *Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). This showing must be made through evidence in

17   the record. Fed. R. Civ. P. 56(c) (explaining the ways in which a "party asserting that a fact

18   cannot be or is genuinely disputed must support the assertion"). Unless the burden of production

19   is met, "the nonmoving party has no obligation to produce anything" to support its claims or

20   defenses. *Nissan Fire*, 210 F.3d at 1103.

21

22

23   _____

[2] Plaintiff filed a praecipe to his Amended Complaint (Dkt. No. 35), but it is unclear what he was correcting:
Plaintiff did not attach a redlined version of the amended pleading that showed how it differed from the pleading

24   that it sought to amend. *See* LCR 15(b).


ORDER ON MOTION FOR SUMMARY JUDGMENT – 4

1    Courts do not make credibility determinations or weigh the evidence at this stage. *See*

2  *Munden v. Stewart Title Guar. Co.*, 8 F.4th 1040, 1044 (9th Cir. 2021). They resolve factual

3  issues in favor of a non-moving party, "only in the sense that, where the facts specifically

4  averred by that party contradict facts specifically averred by the movant, the motion must be

5  denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conclusory, non-specific

6  affidavits are insufficient, and "missing facts" are not to be presumed. *Id.* at 889. Further,

7  uncorroborated and self-serving testimony does not create a genuine issue of fact. *See Villiarimo*

8  *v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).

9                                III.    DISCUSSION

10    Plaintiff brings six claims under Title VII of the Civil Rights Act of 1964, asserting that

11  Defendant discriminated against him based on his race when it terminated his employment. *See*

12  *generally* Dkt. No. 34.

13  **A.    Asserted Factual Disputes**

14    As an initial matter, the Court addresses several of the factual disputes that Plaintiff

15  contends preclude summary judgment in this case. *See* Dkt. No. 45 at 9–14.

16    As the Court articulated above, a genuine dispute as to a material fact may preclude

17  summary judgment. *See* Fed. R. Civ. P. 56(a). "A material fact is one that may affect the

18  outcome of the case under the applicable law." *Walsh v. Tehachapi Unified Sch. Dist.*, 997 F.

19  Supp. 2d 1071, 1077 (E.D. Cal. 2014) (citing *Anderson*, 477 U.S. at 248). "A dispute is genuine

20  'if the evidence is such that a reasonable trier of fact could return a verdict in favor of the

21  nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).

22    Plaintiff contends that Defendant's failure to preserve or produce video and audio

23  evidence of the incident related to Plaintiff's termination is a "specific fact showing that there is

24  a genuine issue for trial." Dkt. No. 45 at 15. But Plaintiff did not file a motion to compel or

1  otherwise alert the Court of a potential discovery dispute until filing his response to the instant

2  motion, well after the deadline for discovery motions in this case. *See generally* Dkt. No. 28

3  (case schedule). While Plaintiff has produced emails showing his negotiations with Defendant

4  over this issue (Dkt. No. 45 at 33–35), he has not presented any evidence suggesting that

5  Defendant improperly engaged in spoliation of relevant evidence in this case. Plaintiff's

6  allegation that "Defendant's weak explanation for not providing video footage shows

7  discriminatory intent" (Dkt. No. 45 at 15) is insufficient to create an issue of material fact

8  precluding summary judgment. *See Bazzo v. Gates*, No. C21-1343, 2025 WL 1092760, at *12

9  (E.D. Cal. Aug. 11, 2025) (finding that plaintiff's assertions that defendants' responses to various

10  discovery requests did not preclude summary judgment where plaintiff had never filed motion to

11  compel).

12       Plaintiff also argues that his behavior is disputed because: (1) he did not direct profanity

13  toward any staff; (2) he was never "instructed" to step into a manager's office, but was instead

14  requested to do so; and (3) he returned Defendant's company property prior to being terminated.

15  *See* Dkt. No. 45 at 6. But it does not appear that Defendant disputes these facts; rather, it argues

16  that these facts were not material to the reason for Plaintiff's termination. *See* Dkt. No. 47 at 6.

17  The Court agrees. To the extent that Plaintiff provides supporting evidence for his assertions of

18  fact, the Court views it in the light most favorable to Plaintiff. However, as discussed below, *see*

19  *infra* Section III.B.3, none of the evidence presented by Plaintiff presents a competing factual

20  narrative as to the causes for Plaintiff's termination.

21       Having determined that no factual dispute as to any material facts precludes summary

22  judgment, the Court turns to a substantive evaluation of Defendant's motion.

23

24

1   **B.      Title VII Disparate Treatment Claims**

2          "Title VII makes it an unlawful employment practice to 'discriminate against any

3   individual with respect to his compensation, terms, conditions, or privileges of employment,

4   because of such individual's race, color, religion, sex, or national origin.'" *Jordan v. Foxx*, 107

5   F. Supp. 3d 1144, 1150 (W.D. Wash. 2015) (quoting 42 U.S.C. § 2000e–2). "Disparate treatment

6   occurs 'where an employer has treated a particular person less favorably than others because of a

7   protected trait.'" *Id.* (quoting *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012)).

8   "[T]he basic allocation of burdens and order of presentation of proof in a Title VII case alleging

9   discriminatory treatment" is as follows:

10                  First, the plaintiff has the burden of proving by the preponderance
                    of the evidence a *prima facie* case of discrimination. Second, if the
11                  plaintiff succeeds in proving the *prima facie* case, the burden shifts
                    to the defendant to articulate some legitimate, nondiscriminatory
12                  reason for the employee's rejection. Third, should the defendant
                    carry this burden, the plaintiff must then have an opportunity to
13                  prove by a preponderance of the evidence that the legitimate
                    reasons offered by the defendant were not its true reasons, but were
14                  a pretext for discrimination.

15   *Id.* (quoting *Rashdan v. Geissberger*, 764 F.3d 1179, 1182 (9th Cir. 2014)); *see also McDonnell*

16   *Douglas Corp. v. Green*, 411 U.S. 792 (1973).

17          **1.      *Prima Facie* Showing of Racial Discrimination**

18          To prove a *prima facie* claim of Title VII discrimination based on race, Plaintiff must

19   show that: (a) he belonged to a protected class; (b) he was qualified for his job; (c) he was

20   subjected to an adverse employment action; and (d) similarly situated employees not in his

21   protected class received more favorable treatment. *Jordan*, 107 F. Supp. 3d at 1150. "Under the

22   *McDonnell Douglas* framework, '[t]he requisite degree of proof necessary to establish a prima

23   facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to

24   the level of a preponderance of the evidence.'" *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225

1  F.3d 1115, 1124 (9th Cir. 2000) (citation omitted). To survive summary judgment with respect to

2  the establishment of a *prima facie* case of disparate treatment, a plaintiff must produce "very

3  little, . . . so long as it is more than 'purely conclusory allegations of alleged discrimination, with

4  no concrete, relevant particulars.'" *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir.

5  2004) (first quoting *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988),

6  then quoting *Chuang*, 225 F.3d at 1124).

### a.    *Protected Class*

7

8  Defendant does not dispute that Plaintiff, as an African–American man, is a member of a

9  protected class. Dkt. No. 44 at 6; Dkt. No. 45 at 15. Employment discrimination based on a

10  person's racial identity is prohibited under Title VII. *See* 42 U.S.C. § 2000e; *Cornwell v. Electra*

11  *Cent. Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006).

### b.    *Qualified for the Job*

12

13  Defendant does not dispute that Plaintiff performed his job adequately; therefore, for the

14  purposes of this motion, the Court assumes without deciding that Plaintiff was performing his

15  job adequately. *See generally* Dkt. No. 44; *McDaniels v. Grp. Health Co-op.*, 57 F. Supp. 3d

16  1300, 1310 (W.D. Wash. 2014) (assuming without deciding that plaintiff was performing job

17  adequately where "thrust" of plaintiff's claim was that while she committed some misconduct,

18  defendant punished her more harshly for that conduct because of her race).

### c.    *Adverse Employment Action*

19

20  The Parties agree that Plaintiff was terminated from his employment with Defendant;

21  thus, Plaintiff has established that Defendant took an adverse employment action against him.

22  *See* Dkt. No. 44 at 9; Dkt. No. 45 at 5; *Knight v. Brown*, 797 F. Supp. 2d 1107, 1125 (W.D.

23  Wash. 2011) ("The Ninth Circuit has recognized that only 'non-trivial' employment actions,

24  such as 'termination, dissemination of a negative employment reference, issuance of an

1   undeserved negative performance review and refusal to consider for promotion' qualify as

2   adverse employment actions." (quoting *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir.

3   2000)).

### d.    *Similarly Situated Employees/Other Circumstances*

5   The thrust of the Parties' dispute is centered around the fourth prong of a *prima facie*

6   showing. Under this prong, Plaintiff must show "either that 'similarly situated individuals

7   outside his protected class were treated more favorably, or that other circumstances surrounding

8   the adverse employment action give rise to an inference of discrimination.'" *Knight*, 797 F.

9   Supp. 2d at 1127 (quoting *Peterson*, 358 F.3d at 603). Plaintiff contends that evidence of a

10  similarly-situated employee satisfies this element. *See* Dkt. No. 45 at 17.

11  Plaintiff points to one similarly-situated employee whom he contends was treated more

12  favorably: Edwin Preston, a former Senior Safety Officer/Specialist with FedEx Express

13  employed in Memphis, Tennessee. *See* Dkt. No. 45 at 17; *Preston v. Federal Express Corp.*, 373

14  F. Supp. 3d 1172, 1178 (W.D. Tenn. 2019). "Whether two employees are similarly situated is

15  ordinarily a question of fact." *Knight*, 797 F. Supp. 2d at 1126 (quoting *Beck v. United Food &*

16  *Com. Workers Union Loc. 99*, 506 F.3d 874, 885 n.5 (9th Cir. 2007)). "In general, 'individuals

17  are similarly situated when they have similar jobs and display similar conduct.'" *Id.* (quoting

18  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003)). "The employees' roles

19  need not be identical, but they must be similar 'in all material respects.'" *Id.* (quoting *Moran v.*

20  *Selig*, 447 F.3d 748, 755 (9th Cir. 2006)).

21  Plaintiff alleges that Preston was similarly situated and treated more favorably when he

22  committed similar misconduct, citing primarily to Preston's lawsuit against Defendant. Dkt. No.

23  45 at 17 (citing *Preston*, 373 F. Supp. 3d at 1172). He argues that Preston had a "far more

24  egregious history of misconduct," including a physical confrontation with another employee, but

ORDER ON MOTION FOR SUMMARY JUDGMENT – 9

1    received several warning letters and counseling prior to being terminated. *See id.* at 17–18.

2    Defendant argues that Plaintiff cannot establish that Preston was similarly situated, because

3    Preston was supervised by a different manager in a different city, and because Plaintiff relies

4    entirely on hearsay evidence. Dkt. No. 44 at 12.

5         When ruling on a motion for summary judgment, a trial court may only consider

6    admissible evidence. *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citing

7    Fed. R. Civ. P. 56(e)). "While a nonmoving party need not present evidence in an admissible

8    *form*, 'the *facts* underlying the [evidence] must be of a type that would be admissible as

9    evidence.'" *Pacesetter Consulting LLC v. Kapreilian*, No. C19-388, 2021 WL 3168471, at *3

10   (D. Ariz. July 27, 2021) (quoting *De La Torre v. Merck Enters., Inc.*, 540 F. Supp. 2d 1066, 1075

11   (D. Ariz. 2008) (alteration in original)). "Thus, though [a party] is not required to produce

12   evidence in a form that would be admissible at trial, [it] must show that [it] would be able to

13   present the underlying facts in an admissible manner at trial." *Id.* (alterations in original)

14   (quoting *De La Torre*, 540 F. Supp. 2d at 1075).

15        "Hearsay is 'a statement, other than one made by the declarant while testifying at the trial

16   or hearing, offered in evidence to prove the truth of the matter asserted.'" *Orr*, 285 F.3d at 778

17   (quoting Fed. R. Evid. 801(c)). "In the absence of a procedural rule or statute, hearsay is

18   inadmissible unless it is defined as non-hearsay under Federal Rule of Evidence 801(d) or falls

19   within a hearsay exception under Rules 803, 804 or 807." *Id.* (citing Fed. R. Evid. 802).

20        Plaintiff's reliance on *Preston* for the truth of the facts underlying Mr. Preston's

21   employment and termination is problematic for two reasons. First, the court opinion upon which

22   Plaintiff relies is inadmissible hearsay, and Plaintiff has not made any showing that he would be

23   able to present the underlying facts in an admissible manner at trial. *See Pacesetter*, 2021 WL

24   3168471, at *3. Second, even if Plaintiff had made a showing that he would be able to, for

ORDER ON MOTION FOR SUMMARY JUDGMENT – 10

1    example, subpoena the parties in *Preston*, the Court cannot presume the truth of any of the facts

2    detailed in the opinion, as the *Preston* court made no factual findings. *See generally* 373 F. Supp.

3    3d at 1176–85. Another *Preston* order upon which Plaintiff relies (*see* Dkt. No. 45 at 17–18) is

4    that court's pretrial order, which lists Preston and defendant FedEx's "contentions" of fact. *See*

5    Joint Pre-Trial Order, *Preston v. Federal Express Corp.*, No. C17-2876 (W.D. Tenn. May 13,

6    2019). These are also inadmissible hearsay.

7         But even if Plaintiff were able to present admissible evidence of the facts underlying the

8    court's opinion in *Preston*, that opinion fails to demonstrate that a similarly-situated employee

9    was treated more favorably than Plaintiff. The Court acknowledges that Preston's behavior

10   seems to be, on its face, similar or worse than Plaintiff's, yet he was not terminated. For

11   example, on one occasion, Preston allegedly failed to present his employee badge after being

12   asked twice and responded with yelling a profanity but received a two-day suspension; on

13   another occasion, Preston received a warning letter when he initiated a physical confrontation

14   where he threw keys at another person and yelled throughout the office. *See* Joint Pre-Trial

15   Order, *Preston v. Federal Express Corp.*, No. C17-2876, at 9–12 (W.D. Tenn. May 13, 2019)

16   (Defendant's contentions of fact). However, "[w]hile not every circumstance between . . .

17   comparators must be identical and there is no strict 'same supervisor' requirement," there are

18   material distinctions between Plaintiff's case and Preston's. *Dismuke v. Boeing Co.*, No. C11-

19   264, 2012 WL 1658374, at *3 (W.D. Wash. May 11, 2012). Preston did not have a similar

20   position to Plaintiff, and he worked for an entirely different management team at a FedEx

21   location across the country from Plaintiff—which means that Preston's supervisors may have

22   had different motivations to retain employees and, particularly, different motivations to retain

23   employees in different job categories, such as Safety Officer, like Preston, or Courier, like

24   Plaintiff. Further, Preston's supervisors may have had different governing standards for handling

1  misconduct than those maintained by Plaintiff's supervisors. Plaintiff provides no evidence

2  showing that the standards and policies governing Preston's employment were the same

3  standards and policies that applied to Plaintiff. And Plaintiff and Preston were employed for

4  significantly different periods of time—Plaintiff for less than two months before the disputed

5  conduct, and Preston for almost eight years. *See Preston*, 373 F. Supp. 3d at 1176.

6        Therefore, Plaintiff has not shown that a similarly situated employee, who was not a

7  member of Plaintiff's protected class, was treated more favorably. As a result, Plaintiff does not

8  establish a *prima facie* showing of racial discrimination.

9        **2.       Legitimate, Nondiscriminatory Reason for Termination**

10       Even if the Court assumes for the sake of argument that Plaintiff's evidence establishes a

11 *prima facie* case of racial discrimination, Defendant has proffered a legitimate, non-

12 discriminatory reason for Plaintiff's termination.

13       The burden of articulating "some legitimate, nondiscriminatory reason for the challenged

14 action" "is one of production, not persuasion, and involves no credibility assessment." *Opara v.*

15 *Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (citation modified) (first quoting *EEOC v. Boeing Co.*,

16 577 F.3d 1044, 1049 (9th Cir. 2009), then quoting *Reeves v. Sanderson Plumbing Prods., Inc.*,

17 530 U.S. 133, 142 (2000)).

18       Defendant argues that its "September 2022 Termination Letter articulates a legitimate,

19 nondiscriminatory reason for Plaintiff's termination, *i.e.* he was terminated by his manager

20 Adam McCann because he engaged in disruptive behavior on September 13, 2022, in violation

21 of FedEx's P2-5 Acceptable Conduct Policy." Dkt. No. 44 at 13; *see also* Dkt. No. 45 at 52–53

22 (Acceptable Conduct Policy). Plaintiff argues that the termination letter is vague and

23 inapplicable to the conduct policy because the policy does not specifically identify Plaintiff's

24 cited conduct, including profanity or yelling, as a violation. *See* Dkt. No. 45 at 9–10. But

1    Defendant's burden here "is one of production, not persuasion, and involves no credibility

2    assessment." *See Opara*, 57 F.4th at 725–26. The Acceptable Conduct Policy, which Plaintiff

3    does not dispute, states that "[a]cceptable conduct involves the sincere respect for the rights and

4    feelings of others and the assurance that personal conduct in both your business and personal life

5    follows the FedEx Code or Business Conduct and Ethics." Dkt. No. 45 at 52. It includes, as

6    examples of behavior that may result in termination, "[i]nsubordination or refusal to follow

7    instructions," and "[e]ngaging in violent, threatening, intimidating, *harassing*, or abusive

8    behavior." *See id.* Defendant's termination letter to Plaintiff cites to conduct that could

9    reasonably fall under these two examples: Plaintiff's refusal to follow instructions, use of curse

10   words, and refusal to speak to a manager or surrender his badge. Dkt. No. 44-2 at 16.

11   Accordingly, Defendant's proffered legitimate, nondiscriminatory reasons for its action are

12   sufficient.

13       **3.    Showing of Pretext**

14       Because Defendant has articulated a legitimate, nondiscriminatory reason to explain

15   Plaintiff's termination, the burden shifts back to Plaintiff to show that Defendant's articulated

16   reasons are pretextual. *See Opara*, 57 F.4th at 726. "[A] plaintiff can prove pretext in two ways:

17   (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence'

18   because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that

19   unlawful discrimination more likely motivated the employer." *Chuang*, 225 F.3d at 1127 (citing

20   *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220–22 (9th Cir. 1998)).

21       "Direct evidence is evidence 'which, if believed, proves the fact [of discriminatory

22   animus] without inference or presumption.'" *Coghlan v. Am. Seafoods Co. LLC*, 413 F.3d 1090,

23   1095 (9th Cir. 2005) (alteration in original) (quoting *Godwin*, 150 F.3d at 1221). It "typically

24   consists of clearly sexist, racist, or similarly discriminatory statements or actions by the

1  employer." *Id.* (citing *Godwin*, 150 F.3d at 1221 (supervisor stated he 'did not want to deal with

2  [a] female")). "Because direct evidence is so probative, the plaintiff need offer 'very little' direct

3  evidence to raise a genuine issue of material fact." *Id.* (quoting *Godwin*, 150 F.3d at 1221).

4       "Circumstantial evidence, in contrast, is evidence that requires an additional inferential

5  step to demonstrate discrimination," and can take two forms. *Id.* "First, the plaintiff can make an

6  affirmative case that the employer is biased"—by, for example, presenting statistical evidence

7  pointing to bias. *Id.* "Second, the plaintiff can make his case negatively, by showing that the

8  employer's proffered explanation for the adverse action is 'unworthy of credence.'" *Id.* (quoting

9  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). When a plaintiff "relies on

10  circumstantial evidence, that evidence must be 'specific and substantial' to defeat the employer's

11  motion for summary judgment." *Id.* (quoting *Godwin*, 150 F.3d at 1222).

12       Here, Plaintiff relies on circumstantial evidence. Plaintiff argues that Defendant's

13  proffered explanation for his termination is unworthy of credence because it is unsupported by

14  his factual recitation of the events surrounding his termination. *See generally* Dkt. No. 45 at 9–

15  14. Accordingly, he must present "specific and substantial" evidence to defeat Defendant's

16  motion for summary judgment. *See Coghlan*, 413 F.3d at 1096. But as explained in the next

17  section, because the "same actor inference" applies in this case, Plaintiff's burden is "especially

18  steep." *See id.*

19              a.      ***Same-Actor Inference***

20       "[W]here the same actor is responsible for both the hiring and the firing of a

21  discrimination plaintiff, and both actions occur within a short period of time, a strong inference

22  arises that there was no discriminatory action." *Coghlan*, 413 F.3d at 1096 (quoting *Bradley v.*

23  *Harcourt, Brace & Co.*, 104 F.3d 267, 270–71 (9th Cir. 1996)). There is a strong inference that

24  there was no discrimination because the "initial willingness to hire the employee-plaintiff is

strong evidence that the employer is not biased against the protected class to which the employee

belongs." *Coghlan*, 413 F.3d at 1096 (citing *Bradley*, 104 F.3d at 270–71).

Here, Defendant asserts that FedEx Manager Adam McCann made the decision to hire

Plaintiff, as well as the decision to terminate his employment. Dkt. No. 44 at 7. Plaintiff raises in

opposition the fact that several managers were involved in his hiring and termination, citing to

offer letters and termination letters signed by individuals other than Mr. McCann. Dkt. No. 45 at

19.[3] However, regardless of who signed the various paperwork, Plaintiff admitted at his

deposition that Mr. McCann was the individual who made the hiring decision (Dkt. No. 44-1),

and the documents submitted with his response show that Mr. McCann was the individual

responsible for the corrective actions that resulted in termination as well as the actual termination

(*see* Dkt. No. 45 at 24, 28–30). But even where there are multiple decisionmakers involved in

both the hiring and firing, if only one of the decisionmakers involved in both is the same, the

same-actor inference may apply. *See Wilson v. Battelle Mem'l Inst.*, No. C11-5130, 2012 WL

4514510, at *10 (E.D. Wash. Oct. 1, 2012); *Griffith v. Schnitzer Steel Indus., Inc.*, 128 Wn. App.

438, 454, 115 P.3d 1065 (Ct. App. 2005). Here, there is no dispute that Adam McCann was

involved with both Plaintiff's hiring on August 3, 2022, and Plaintiff's termination on September

15, 2022—less than two months later. *See* Dkt. No. 44-1 at 14 (noting that Adam McCann "was

the one who made the decision [to hire Plaintiff]"); Dkt. No. 45 at 24 (termination letter).

Plaintiff also argues that the fact that he "properly returned all of the company property

when requested by Adam McCann" prior to being terminated is a significant change in

---

[3] It is unclear exactly which pages of the attachments to his response correspond to the letters, as there are no cover
pages or separators between documents that indicate which exhibit letter corresponds to each document. However,
the Court notes that offer letters are only sent after a hiring decision is made. Further, the letters discussing
Plaintiff's termination signed by individuals other than Mr. McCann relate to his appeal of his termination and not to
the termination itself. *See e.g.*, Dkt. No. 45 at 41–43.

1    circumstance which voids the same-actor inference. Dkt. No. 45 at 19. Plaintiff points to *Sandell*

2    *v. Taylor-Listug, Inc.* in support of his argument. Dkt. No. 45 at 19 (citing 115 Cal. Rptr. 3d 453

3    (Cal. Ct. App. 2010)). In *Sandell*, an age discrimination case, the plaintiff "suffered a stroke that

4    caused him to appear to be significantly older than he may have appeared at the time he was

5    hired," leading the court to determine that although only five years existed between plaintiff's

6    hiring and firing by the same actor, it could not adopt the inference that there had been no

7    discriminatory action as to plaintiff's age. 115 Cal. Rptr. 3d at 475. The intervening circumstance

8    in *Sandell* was directly related to the plaintiff's claim of age discrimination—the plaintiff's

9    stroke caused him to appear significantly older. *See id.* Here, Plaintiff's proposed intervening

10   circumstance—the fact that he returned all company property prior to his termination—does not

11   demonstrate a change in Plaintiff's employment circumstances or present any suggestion of bias

12   by Defendant.

13        Therefore, the Court finds that the same-actor inference applies to this case. The initial

14   willingness of Defendant to hire Plaintiff is strong evidence that the employer is not biased

15   against the protected class to which the employee belongs. Nevertheless, "[t]he same-actor

16   inference is neither a mandatory presumption (on the one hand) nor a mere possible conclusion

17   for the jury to draw (on the other). Rather, it is a 'strong inference' that a court must take into

18   account on a summary judgment motion." *Coghlan*, 413 F.3d at 1098 (citing *Bradley*, 104 F.3d

19   at 271). Accordingly, the Court must next consider whether Plaintiff has made out the strong

20   case of bias necessary to overcome this inference.

21              **b.    *Specific and Substantial Evidence of Bias***

22        Plaintiff identifies several pieces of evidence that he contends support a showing of racial

23   bias by Defendant.

24

1    First, Plaintiff contends that "[a] lack of diversity in the ratio between the white managers

2    to the Plaintiff's race (African-American) shows the disadvantage the Plaintiff had against his

3    coworkers." Dkt. No. 45 at 15. The potential effect of a non-diverse group of managers is

4    certainly relevant to Plaintiff's claim but, standing alone, it does not present a competing

5    inference that is sufficient to support a showing of pretext by a preponderance of the evidence.

6    *See Gibson v. King County*, 397 F. Supp. 2d 1273, 1279 (W.D. Wash. 2005) (finding that lack of

7    diversity on interview panel created inference of discrimination where defendant's explanation

8    for non-diverse panels—an inability to find qualified persons of color to serve on panels—was

9    rebutted by evidence that qualified individuals existed).

10    Plaintiff also contends that his letter of termination was "too vague and inapplicable to

11    [Defendant's acceptable conduct policy]." Dkt. No. 45 at 9. But Plaintiff's disagreement with

12    Defendant's conclusions as to his conduct and the reasons for his termination does not mean that

13    those conclusions were not the actual reason for his termination. *See Popek v. Prime Source*, No.

14    C22-5283, 2023 WL 6466008, at *13 (W.D. Wash. June 20, 2023), *report and recommendation*

15    *adopted by* 2023 WL 5950459 (Sept. 13, 2023). "The Court's role is to remedy discrimination,

16    not to assume the role of a super personnel department, assessing the merits—or even

17    rationality—of employers' nondiscriminatory business decisions." *Id.* (citation modified)

18    (quoting *Shokri v. Boeing Co.*, 331 F. Supp. 3d 1204, 1220–21 (W.D. Wash. 2018)). Here,

19    Plaintiff admits that he raised his voice and used profanity (though he argues that he did not

20    direct profanity toward any particular manager), initially refused to return his badge, and left the

21    workplace when he had previously been scheduled to attend training. *See, e.g.*, Dkt. No. 44-1 at

22    22–32; Dkt. No. 45 at 11, 13, 25–26, 44, 51, 65–70. Plaintiff's own depiction of the incident

23    giving rise to his termination, even when read in the light most favorable to Plaintiff, does not

24    present sufficient evidence or demonstrate genuine disputes as to material facts that would allow

1  a reasonable jury to find Defendant's decision to terminate Plaintiff's employment based on the

2  incident was merely a pretext to mask racial discrimination.

3       Therefore, Plaintiff has not presented "specific and substantial" evidence that

4  Defendant's proffered rationale for its decision to terminate Plaintiff's employment was

5  pretextual. Taking into consideration both the same actor inference and Plaintiff's failure to

6  provide specific and substantial evidence of bias, the Court finds Plaintiff fails to meet his

7  burden to prove by a preponderance of the evidence that the legitimate, non-discriminatory

8  reason offered by Defendant for terminating Plaintiff was a pretext for discrimination.[4]

9                         **IV.    CONCLUSION**

10       Accordingly, Defendant's motion for summary judgment (Dkt. No. 44) is GRANTED. This

11  case is DISMISSED.

12       Dated this 26th day of August 2025.

13

14                                             Tana Lin
                                               United States District Judge

15

16

17

18

19

20

21

22  _____

[4] Because the Court finds that summary judgment is appropriate, it does not reach the timeliness issue raised by Defendant. The Court nevertheless notes that Defendant's statement that "[c]ourts have consistently held that FedEx's contractual limitations period is enforceable as to Title VII claims" (Dkt. No. 47 at 14) misrepresents its cited case. The case actually holds that FedEx's six-month contractual limitation is not unreasonable *as to Section 1981* claims, because "*unlike Title VII claims*, 'there are no time-consuming procedural prerequisites that a plaintiff must satisfy before she brings her claim in court." *Harris v. FedEx Corp. Servs.*, 92 F.4th 286, 295 (5th Cir. 2024) (emphasis added) (quoting *Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 179 (D.D.C. 2016)).

ORDER ON MOTION FOR SUMMARY JUDGMENT – 18